IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02754-PAB-MEH

GAYLE DUNN,

    Plaintiff,

v.

ERIC K. SHINSEKI, Secretary, United States Department of Veteran Affairs,

    Defendant.

_____

**ORDER ON MOTION TO COMPEL**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Plaintiff's Combined Rule 37(a)(3)(B) Motion to Compel Production of Documents and Motion to Re-Open Discovery for the Limited Purpose of Completing Discovery [filed November 15, 2011; docket #29]. The matter is briefed and has been referred to this Court for disposition. Oral argument would not materially assist the Court in adjudicating the motion. For the reasons that follow, the Court **grants in part** and **denies in part** the Plaintiff's motion.

**I.    Background**

    Plaintiff initiated this action on November 10, 2010 alleging that Defendant, her current employer, violated Title VII of the Civil Rights Act of 1964, as amended, by failing or refusing to promote her to a position for which she was qualified based upon her race. This Court issued a Scheduling Order in the case on February 3, 2011, affirming the parties' proposed deadlines of September 12, 2011 to serve written discovery requests, October 14, 2011 for the discovery cutoff and November 28, 2011 for the dispositive motion deadline. *See* dockets #8 and #10. Until the present motion was filed, no party sought extensions of these deadlines from the Court.

In her motion, Plaintiff seeks an order compelling Defendant to respond to her requests for production of documents, which she admits were served four days late, and reopening discovery for the purpose of taking additional depositions of three witnesses, Dan Powell, Joe Williams and Lisa Dobson-Wilson. Plaintiff contends that her discovery requests were submitted to the Defendant four days late simply as a result of a calendaring error and that Defendant would not have been prejudiced in responding to them. She also asserts that she demonstrates good cause to reopen discovery because Defendant caused the delay in scheduling depositions by failing to provide dates and times for the requested deponents before the discovery cutoff. Finally, Plaintiff claims that the requested depositions are necessary for responding to Defendant's motion for summary judgment in that the deponents "all played a role in how the decision-maker reached the decision to not select Plaintiff Dunn and their testimony is relevant and essential to Plaintiff Dunn's claims."

Defendant opposes the motion asserting that it has properly complied with all deadlines, Plaintiff has failed to cooperate and comply with such deadlines, and granting Plaintiff's motion will prevent the case from moving smoothly to the pretrial conference and eventually to trial. Defendant contends that Plaintiff was not diligent in pursuing the discovery she now seeks, by cancelling the depositions of two witnesses she now wishes to depose two days before they were scheduled to begin, by failing to identify for the Defendant the additional deponents prior to the discovery cutoff, by waiting two months to seek an extension of the deadline for serving discovery requests, and by waiting nearly a month to seek an order reopening discovery and two months for an order compelling discovery. Further, Defendant claims it will be prejudiced since it has already filed a dispositive motion, so will have to adjust its approach to defending the case. Defendant argues that Plaintiff does not need information from the deponents to respond to the dispositive motion since

none of the requested deponents had any role in the decision whether to promote.

**II.      Motion to Reopen Discovery to Take Depositions**

"Whether to extend or reopen discovery is committed to the sound discretion of the trial court ...." *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). *Smith v. United States* provides the appropriate standard for the adjudication of Plaintiff's motion. In *Smith*, the Tenth Circuit

> identified several relevant factors in reviewing decisions concerning whether discovery should be reopened, including: 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169 (citation omitted).

      A.      <u>Imminence of Trial</u>

A trial date has not been scheduled in this case; therefore, the first factor weighs in favor of granting Plaintiff's motion.

      B.      <u>Opposition by and Prejudice to Defendant</u>

As set forth above, Defendant opposes the motion and claims prejudice in that it has already timely filed a motion for summary judgment. According to Defendant, if the court reopens discovery to allow the depositions, Defendant will likely need to adjust its defense of the case accordingly, which will require additional time and expense. "There can be no doubt that allowing Plaintiff to take additional discovery requires Defendants to incur additional and unanticipated expenses . . . ." *Quintana v. Edmond*, No. 06-cv-01187-WDM-KLM, 2009 WL 1798219, at *2 (D. Colo. June 23, 2009). The Court approved the discovery cutoff proposed by *both* parties for October

14, 2011. (Docket #37.) Neither side requested an extension of time before the deadline expired.

Defendants pursued discovery within the stated time frame and timely filed a motion for summary judgment on November 28, 2011 on the issue of Plaintiff's non-promotion. Allowing discovery on the issue now, 2-1/2 months after the discovery cutoff and more than a month after the motion for summary judgment was filed[1] would be an injustice to the diligence demonstrated by Defendant. Defendant should not be required to spend the money and time necessary to defend three additional depositions after they have complied with the Scheduling Order. Thus, the Court agrees that Defendant would be prejudiced by having to adjust its approach to defending this litigation after the close of discovery and the passing of the dispositive motion deadline. *See, e.g., Martinez v. Target Corp.*, 384 F. App'x 840, 848 (10th Cir. 2010) (unpublished) (defendant would be prejudiced by the reopening of discovery and the re-briefing of summary judgment, due to late disclosure of expert reports); *Butler v. Boeing Co.*, 110 F. App'x 71, 73 (10th Cir. 2004) (unpublished) (affirming trial court's denial of motion to reopen discovery after summary judgment filed and on basis of relevance); *Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2011 WL 588717, at *2 (D. Colo. Feb. 10, 2011) ("Defendants would be prejudiced if discovery were reopened in light of the fact that their summary judgment motion has already been filed."). The Court concludes that the second and third factors weigh in favor of denying Plaintiff's motion.

    C.    Plaintiff's Diligence in Obtaining Discovery

The Court notes that its conclusion concerning the second and third factors is bolstered by the Plaintiff's lack of diligence in pursuing her requested depositions. Although Plaintiff places

---

[1] The Court notes that Judge Brimmer has denied Plaintiff's request to "stay" the deadline to respond to Defendant's motion, and has ordered Plaintiff to respond on or before January 4, 2012.

blame on the Defendant for delays in scheduling depositions, the Court concludes that the record reflects just the opposite. As argued by the Defendant, it is incumbent upon the party seeking the deposition (here, the Plaintiff) to "make a good faith effort to schedule it by agreement at a time reasonably convenient and economically efficient to the proposed deponent, all counsel of record, and pro se parties." D.C. Colo. LCivR 30.1A. The record in this matter reflects that Plaintiff's counsel (Joseph Salazar) first contacted defense counsel (Mustafa Hersi) regarding Plaintiff's request for depositions on May 16, 2011, more than three months after initial disclosures were exchanged and the Scheduling Order was issued. Docket #32-1 at 2. Hersi responded two days later stating, "I have contacted the agency to check on the availability [of] the requested deponents on the dates of 7/18-7/22." Docket #29-1.

The next communication mentioning scheduling the depositions was an email from Salazar to Hersi more than two months later on July 20, 2011 concerning a stipulated protective order stating, "Also, about a month ago you indicated that you would check on the availability of those witnesses I want to depose. I have not heard back from you. Please let me know what their availability is." Docket #29-2. Hersi responded an hour later claiming that, because Plaintiff issued no deposition notices for the requested dates, he assumed Plaintiff intended to pursue the depositions at a later date. *Id.* Two days later, on July 22, 2011, Salazar responded that no dates were ever confirmed, but stated "Nonetheless, I am available the week of Aug. 8-12; 15-18 and 22-26." Docket #29-3. Hersi responded an hour later promising to check on the available dates. *Id.*

On August 1, 2011, Salazar emailed Hersi requesting a one week extension within which to respond to written discovery and asking whether Hersi had gotten dates and times for the depositions. Docket #29-4. Hersi responded the following morning with a proposed schedule for

the depositions. *Id.* Salazar immediately responded approving some dates, but not others. Docket #32-3. After further exchanges that morning, counsel came to an agreement on dates and times for depositions of six witnesses, including Dan Powell and Joe Williams, in mid- to late August. *Id.*

On August 15, 2011, just two days before the depositions were scheduled to begin, Salazar emailed Hersi attaching deposition notices for three witnesses, but informing Hersi that he did not need to depose three others: Dan Powell, Joe Williams and Pete Muller. Docket #32-4. Apparently, the three noticed depositions took place as scheduled on August 17, 18 and 25, 2011.

Plaintiff claims that at the last scheduled deposition, a conversation took place between Salazar and Hersi wherein Salazar informed Hersi he wanted to take the depositions of Dan Powell, Joe Williams and Lisa Dobson-Wilson.[2] Defendant does not dispute that a conversation concerning additional depositions took place on August 25, 2011, but asserts that Hersi told Salazar to provide him with a written list of requested deponents so that he could check their availability for late September or early October (after Hersi returned from his nuptials). The next written communication on the subject was a faxed note from Salazar to Hersi on September 16, 2011 attaching Plaintiff's second set of written discovery and stating, "I am still waiting to hear from you regarding when we may schedule the next round of depositions." Docket #32-6 at 2. The note does not identify the requested deponents.

Defendant claims that Hersi sent Salazar a September 21, 2011 letter by certified mail informing Salazar that Hersi still needed a list of requested deponents and that the September 16,

---

[2]Plaintiff claims that he asked to keep the record open at the deposition while the conversation took place; however, there is no conversation regarding additional depositions recorded in the August 25, 2011 deposition transcript (docket #32-14) and the court reporter attests only that she has a "vague recollection of a casual conversation during one of the [ ] depositions in which Mr. Hersi's [sic] mentioned his upcoming nuptials" (docket #29-6).

6

2011 set of written discovery was served late and, thus, Defendant would not respond.  However, a copy of such letter was not provided to the Court.  The Court notes that Hersi refers to the letter in a subsequent email message described below.

Nevertheless, on October 4, 2011, Hersi emailed Salazar informing him that the September 21, 2011 certified letter was not claimed and requesting a "better" address.  Docket #32-9.  In addition, Hersi asked Salazar to "please identify the names of the individuals, if any, who you would like to depose going forward."  *Id.*  Salazar responded two days later on October 6, 2011 asking to speak with Hersi by phone that day, but Hersi responded that he was booked and could correspond by email.  Docket #32-10.  Salazar responded describing a "parallel" investigation by the Office of Special Counsel and informing Hersi of a concern that some documents provided to Plaintiff may have been "falsified."  Docket #32-11.  Hersi responded asking for more detail in writing.  *Id.*  Nothing was mentioned during this exchange regarding the requested depositions.

On October 13, 2011, the day before the discovery cutoff, Defendant filed a motion to compel responses to certain discovery requests propounded upon the Plaintiff.  Docket #23.  That same day, Hersi emailed Salazar in response to a voicemail from Salazar concerning the motion.  Docket #32-12 at 4.  In that email, Hersi confirms the conversation with Salazar after the deposition on August 25, 2011 concerning additional depositions stating,

> I was more than happy to clear dates to the extent you wanted to depose additional individuals upon receipt of a list of names of the individuals you wanted to depose. This request was made to prevent any confusion. I also indicated that I would take care of this prior to my being out of the office from September 5, 2011 through September 20, 2011. That conversation occurred on August 25, 2011. Prior to September 5, 2011, we never received such a list.
>
> On September 16, 2011, while I was out of the office, my office received a fax from you that stated you were "still waiting to hear from [me] regarding when we may schedule the next round of depositions." This cover page also did not identify who

7

> you wanted to depose.
>
> Upon my return to the office, we sent a certified letter seeking a list of such names on September 21, 2011. No response was given.
>
> On October 4, 2011, we sent an additional email, which sought the names of the individuals you wanted to depose. Instead of providing a list of names, you requested a telephonic conference to discuss issues that had no relationship with the scheduling of depositions .... In response to this request, we asked that you provide us - in writing - any concerns regarding discovery. ... No response was given.
> ...
> In fact, your voicemail - sent less than two days before the discovery cutoff - does not identify the names of the individuals you want to depose.

Docket #32-12 at 4-5. Salazar responded to this message the same day concerning the issues raised in the motion to compel and, with respect to the depositions, stated simply, "Also, you still have not responded to our request to conduct the last of the depositions, or to my thoughts regarding settlement. It is very disconcerting to me that you refuse to have this discussion with me." *Id.* at 4. Salazar did not identify the witnesses he wished to depose. Hersi responded the next morning, October 14, 2011, with information regarding the motion to compel and informed Salazar that Defendant opposed any extension of the discovery cutoff. *Id.*

On October 18, 2011 (four days after the discovery cutoff), Salazar emailed Hersi informing him of Salazar's new contact information. *Id.* at 3. Salazar also noted, "Lastly, you have not indicated any dates when I can depose the last of the three witnesses. Do you plan on offering dates?" *Id.* Hersi responded that discovery had closed and repeated Defendant's position regarding an extension. *Id.*

Based upon the chronology of events as set forth in the record provided, the Court finds that Plaintiff was not diligent in pursuing the depositions she now wishes to take. Without explanation or excuse, Plaintiff (1) waited three months to contact Defendant to schedule depositions she wished

to take of defense witnesses, (2) waited two months to follow up on her request for scheduling depositions, (3) just prior to the scheduled dates in August 2011, cancelled two of the depositions she now wishes to take, and (4) never responded to Defendant's October 4, 2011 request[3] to provide a written list of requested deponents to the Defendant, although she responded to other issues raised by Defendant. Again, Plaintiff bears the burden of pursuing and scheduling the depositions, but she failed to do so in a timely manner. Therefore, the fourth factor weighs in favor of denying the Plaintiff's motion.

### D.    Foreseeability of the Need for Additional Discovery

Typically, in this Court, the parties are provided six months within which to conduct discovery. In this case, the Court approved a discovery period of more than eight months. For a single-plaintiff employment discrimination case, the Court finds that eight months is more than sufficient time within which to conduct discovery. Therefore, any foreseeability of the need for additional discovery in this case is nearly nonexistent and, thus, the Court finds that the fifth factor weighs in favor of denying Plaintiff's motion.

### E.    Likelihood that the Discovery will Lead to Relevant Evidence

Plaintiff claims that taking the requested depositions is necessary for responding to Defendant's motion for summary judgment in that the deponents "all played a role in how the decision-maker reached the decision to not select Plaintiff Dunn and their testimony is relevant and essential to Plaintiff Dunn's claims." Defendant responds explaining that Mr. Williams and Mr.

---

[3]Whether Plaintiff verbally listed the requested deponents or Defendant asked for a written list at the August 25, 2011 deposition or whether Defendant requested a list in its September 21, 2011 letter are issues that remain disputed. However, the Court finds it need not resolve such issues for purposes of this order.

Powell were on a panel for the first round of interviews, at which the Plaintiff was selected to proceed to the second round of interviews. Ms. Dobson-Wilson was not on any panel, but she provided an affidavit in support of the motion for summary judgment attesting "to facts concerning the hiring process that were disclosed in documents previously produced to Plaintiff." Docket #32 at 14.

According to her motion, Plaintiff requests a one-month extension of the dispositive motions deadline to allow her to take the depositions to prepare to respond to such dispositive motion.[4] However, Defendant timely filed its motion for summary judgment on the November 28, 2011 deadline, and on December 21, 2011, the District Court provided the Plaintiff a 15-day extension of time – to and including January 4, 2012 – within which to respond.

While the Court finds that Plaintiff's argument concerning the relevancy of the requested deposition testimony is vague, the Court also notes that it is unlikely the Plaintiff would be able to schedule the depositions and secure the witness' testimony in the time remaining before her response to the summary judgment motion is due. Therefore, the Court finds that the sixth factor is neutral.

Weighing the *Smith* factors as required by the Tenth Circuit, the Court concludes that Plaintiff has failed to demonstrate that discovery should be reopened in this case. Plaintiff's request to reopen discovery is denied.

### III.    Motion to Compel Responses to Late-Served Discovery Requests

According to the Scheduling Order in this case, the deadline for serving written discovery requests was September 12, 2011 and the discovery cutoff was October 14, 2011. Plaintiff filed her

---

[4]The Court notes that Plaintiff did not request an expedited briefing schedule or expedited ruling on the motion.

motion seeking extensions of these deadlines on November 15, 2011.

Rule 6 of the Federal Rules of Civil Procedure provides that when an act must be done within a specified time, the court may extend the time "on motion made after the date has expired if the party failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). "Congress plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (interpreting "excusable neglect" in the context of the federal rules of bankruptcy procedure); *see also Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995) (applying *Pioneer* definition to Rule 6(b) analysis). The Tenth Circuit holds that a finding of excusable neglect under Rule 6(b)(1)(B) requires both a demonstration of good faith by the party seeking the enlargement and a finding that there was a reasonable basis for not complying within the specified period. *See In re Four Seasons Securities Laws Litigation,* 493 F.2d 1288, 1290-91 (10th Cir. 1974). Thus,

> [t]o determine whether the neglect is "excusable," the court must take account of all relevant circumstances surrounding the party's omission, including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Control over the circumstances of the delay is "the most important single ... factor ... in determining whether neglect is excusable."

*Stringfellow v. Brown,* 105 F.3d 670, 1997 WL 8856, at *1 (10th Cir. 1997) (unpublished) (holding that the trial court properly rejected a late filing where it appeared plaintiff's counsel knew of his

11

obligation to respond, but simply disregarded the deadline based upon the volume of evidence to review and his own workload) (internal citations omitted); *see also Schupper v. Edie,* 193 F. App'x 744, 746, 2006 WL 2053769, *2 (10th Cir. 2006) (unpublished) (affirming trial court's consideration of factors and conclusion of plaintiff's failure to demonstrate excusable neglect). Rule 6(b)(1)(B)'s "excusable neglect" standard requires an equitable determination, "taking account of all relevant circumstances surrounding the party's omission." *See Pioneer,* 507 U.S. at 395.

Here, Plaintiff's counsel concedes that he made a calendaring error in setting the deadline for serving written discovery for September 16, 2011, rather than September 12, 2011, as set forth in the governing Scheduling Order. Had the Plaintiff sought an extension of the deadline in a timely manner, the Court might have easily granted such request in accordance with *Pioneer* and its progeny. However, the Plaintiff fails to explain her delay in waiting two months to file the present motion seeking an extension of the deadline and an order compelling Defendant to respond.

Plaintiff's failure in this regard does not end the analysis. Following the Supreme Court's requirement to make an equitable determination in this case, the Court notes from its review of the proffered record that defense counsel did not make Plaintiff's counsel aware of his calendaring mistake until October 20, 2011. Docket #32-12 at 2. Although Hersi informs Salazar in the email that his "September 21, 2011 correspondence notes[ ] your discovery requests were served after the deadline for serving written discovery. Thus, we will not be providing any response." (*id.*), Defendant fails to provide a copy of such letter to the Court and to demonstrate that Plaintiff ever received such letter. In fact, Defendant's own documents demonstrate that the certified letter went unclaimed and that a notice was left at a "business closed." *See* docket #32-7. Even had Defendant provided a copy of the September 21, 2011 letter to the Court as evidence of its stated content,

Defendant's argument that Plaintiff may have received a different letter later that week does not demonstrate that the Plaintiff ever received the September 21, 2011 letter.

Thus, the record reflects the Plaintiff had knowledge on October 20, 2011 that Defendant would not respond to her second set of written discovery. She did not file the present motion until November 15, 2011. Plaintiff asserts that she needed to wait to file the motion for receipt of the court reporter's November 5, 2011 affidavit, which she received on November 7, 2011. The time between her receipt of the affidavit and preparing and/or filing the present motion is long but not unreasonable and does not implicate any bad faith on the part of the Plaintiff. The Defendant articulates no prejudice in responding to the second set of discovery, and the Court perceives no additional expense in responding at this stage of the litigation over that which would have been expended had the discovery been propounded on or before September 12, 2011. The Court perceives the impact on judicial proceedings as minimal because, unlike the deposition testimony, the Plaintiff does not claim that information provided in response to its second set of written discovery is necessary for responding to the pending summary judgment motion. As set forth above, the majority of the delay was outside of Plaintiff's control as her counsel did not have knowledge of his mistake for more than a month. Therefore, taking account of all relevant circumstances in this case, the Court concludes that Plaintiff has demonstrated excusable neglect in failing to meet the September 12, 2011 deadline and waiting until November 15, 2011 to request an extension of the deadline.

Thus, the Court grants Plaintiff's request to extend the deadline for submitting written discovery requests to September 16, 2011. Defendant has neither formally responded nor objected to the discovery requests; therefore, the Court will review them to determine whether response is

appropriate.

The scope of evidence that is subject to discovery under the federal rules is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1) (2011). The party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1). *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004).

Here, the Defendant states in summary fashion in its response to the present motion that "the relevance, if any, of the written discovery is undermined by the fact that the discovery is either overly broad, irrelevant, already provided to Plaintiff, or could have been propounded months earlier." Docket #32 at 14. Defendant provides no support nor any further explanation for such statement. However the eight requests for production, on their face, appear to be relevant to the claims and defenses raised in this matter pursuant to Fed. R. Civ. P. 26(b)(1). *See* docket #32-6. In addition, the requests appear to be numbered within the limits set forth in the Scheduling Order. Therefore, the Court will order the Defendant to respond (including objections) to Plaintiff's Second Set of Requests for Production of Documents[5] on or before January 16, 2012.

---

[5] The document is actually titled "Second Set of Requests for Production of Documents, Interrogatories and Admissions" but the document does not contain interrogatories or requests for admission. *See* docket #32-6.

**IV.	Conclusion**

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiff's Combined Rule 37(a)(3)(B) Motion to Compel Production of Documents and Motion to Re-Open Discovery for the Limited Purpose of Completing Discovery [filed November 15, 2011; docket #29] is **granted in part** and **denied in part** as specified herein. Defendant shall respond to the Second Set of Requests for Production so ordered no later than January 16, 2012. All requests for attorney's fees in this matter are denied.

Dated at Denver, Colorado, this 29th day of December, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge